WILLIAM H. HOOVER, assignee &c., *vs.* HERMANN GREEN-BAUM, impleaded &c.

In order to charge the creditors of a bankrupt with the amount of a debt collected by them out of his property, in fraud of the bankrupt act, by means of a judgment confessed by him, it is necessary to show that such creditors had knowledge that the debtor was acting in view of insolvency, and with intent to give them a preference.

Facts obtained by the attorneys of the creditors, in the prosecution of a suit against the debtor, are not sufficient to charge the creditors with such knowledge; where it does not appear that the creditors knew of the commencement of such suit, and there was no communication of the facts obtained by the attorneys to the creditors.

The mere non-payment, by the debtor, of the claim against him, and the collection thereof upon a judgment, is not sufficient to charge the creditors with the knowledge required by the bankrupt act

ACTION by the plaintiff, as assignee in bankruptcy, to recover moneys collected by the defendants of the bankrupt, in fraud of the act to establish a uniform system of bankruptcy, &c., passed March 2, 1867, and the amendments thereto.

The complaint alleged that the plaintiff was a resident of the State of Nebraska, and was the assignee in bank-

ruptcy of Elias S. Oppenheimer, a bankrupt, duly adjudged and declared such by the district court of the United States for the district of Nebraska. That these defendants were copartners, doing business in the city of New York, under the firm, name and style of Wise, Greenbaum & Co. That on the 10th day of August, 1868, said Elias S. Oppenheimer of the State of Nebraska, being insolvent, or in contemplation of insolvency, and with intent to give the defendants a preference over others of his creditors, confessed a judgment in favor of the defendants' firm for the sum of $1124.75, in a court of competent jurisdiction in the State of Nebraska. That subsequently, and on or about the 11th day of November, 1868, said Elias S. Oppenheimer filed his petition and schedule and went into bankruptcy, and was adjudged and declared a bankrupt according to the provisions of the bankrupt law, thus making the defendants' firm a preferred creditor. That four months did not elapse between the confession of said judgment and the commencement of proceedings in bankruptcy. That the defendants, at the time of such confession of judgment, knew, or had reasonable cause to believe, said Oppenheimer insolvent; and that said judgment was confessed and preference given in fraud of the provisions of an act entitled "An act. to establish a uniform system of bankruptcy throughout the United States," passed March 2, 1867, and the amendments thereto. That the defendants' firm, or their agent, collected and received on account of said judgment, and prior to the commencement of proceedings in bankruptcy, or shortly thereafter, from the said Oppenheimer, $379.14 That this plaintiff, as such asignee, was entitled to recover of these defendants the whole amount received by them on account of said judgment, under the 35th section of the bankrupt act. The complaint then alleged a demand of said sum, of the defendants, and a refusal to pay the same or any part thereof.

The defendant, Hermann Greenbaum, was the only one

of the defendants who appeared. By his answer he denied the material allegations of the complaint, and alleged that the defendants dissolved their copartnership on February 1, 1868; that this defendant, by the agreement of dissolution, was liquidating the affairs of the defendants' late firm; that for the purpose of such liquidation he handed a claim of the defendants against Elias S. Oppenheimer to Messrs. Ledyard, Archer & Co., then of New York city, for collection.

The action was tried before a referee, who reported in favor of the plaintiff, and the defendant, Hermann Greenbaum, appealed from the judgment.

*Kauffman, Frank & Wilcoxson,* for the appellant.

I. A copy of the assignment made by the judge or register to one as assignee, duly certified by the clerk of the court, under the seal thereof, is conclusive evidence of the authority of such assignee to sue for and recover the property of the bankrupt. (*See Bankrupt Act,* §§ 14, 16.)

II. The act of suffering a creditor to take the property of the debtor upon legal process, is a transfer of the property to the creditor, within the meaning of the 35th and 39th sections of the act, and the assignee is entitled to recover the property transferred, or its value. (*See Bankrupt Act,* §§ 35, 39. *In re Black & Secor,* 1 *Bank. Reg.* 81. 2 *id.* 65. *Wilson* v. *Brinkman, Id.* 149. *Street* v. *Dawson,* 1 *Am. Law Times,* 369. *Fitch* v. *McGee,* 2 *Bank. Reg.* 164. *Street* v. *Dawson,* 4 *id.* 60.) Where the probable consequence of an act is to give a preference, the debtor will be presumed to have intended to give such preference. (*In re Drummond,* 1 *Bank. Reg.* 10. *In re Black & Secor, Id.* 81. *In re Sutherland, Id.* 140. *In re Diblee,* 2 *id.* 185. *Farrin* v. *Crawford, Id.* 181. *Bump's Bank. L. and Pr.* 402, 3*d ed. In re Heller, vol.* 4 *Alb. Law Jour.* 49.)

III. The fact is clearly established that the defendants employed Ledyard, Archer & Co. (whose business was to

make collections, &c.,) to collect this claim, and that they employed Messrs. McLennan & Archbald, who did collect the money by execution on a judgment by confession, and that the defendant in the former suit (Oppenheimer) was overwhelmed with debts at the time this claim was received by Messrs. McLennan & Archbald, and about to be overwhelmed with judgments, all of which the defendants' attorneys knew, and entered into a general scramble with other creditors for a preference. The defendants in this action are chargeable with the acts and knowledge of their attorneys in their action against Oppenheimer. (*Bump's Bank. L. and Pr.* 403, 404, 3*d ed.*) The defendants in this action are chargeable with notice and the consequence of the acts of their attorneys in the proceedings against Oppenheimer. " The acts, knowledge and intentions of the agent are, in law, the acts, knowledge and intention of his principal." (*Bump's Bank. L. and Pr.* 404 *to* 408, 3*d. ed. Graham* v. *Stark,* 3 *Bank. Reg.* 92. 2 *Chicago Legal News,* 73. *The Distilled Spirits,* 11 *Wall.* 356.) A general authority to an agent, with subsequent tacit acquiescence, is enough to prevent a party from coming in to share in the distribution of the bankrupt's estate. (*Bump's Bank. L. and Pr.* 408, 3*d ed. In re Coleman,* 2 *Bank. Reg.* 172.) No such thing as tacit acquiescence of the creditor is requisite to enable the assignee to recover back money actually collected by the agent of the creditor, contrary to the act. But the tacit acquiescence subjects the party to the penalty of not being allowed to share in the proceeds of the assets. No such question is presented here. In this case, not only did the defendants' agents know of the insolvency, but they actually collected and received the money. The defendants' agents, Ledyard, Archer & Co., having received the money, which they had authority to do, the defendants are chargeable with the consequences thereof. Receipt by the defendants' agent was, in contemplation of law, receipt by them of the moneys collected.

IV. The defendants had reasonable cause to believe that Oppenheimer was "insolvent or contemplating insolvency," as the following facts clearly establish: Their debt matured, and they called on Oppenhiemer for payment; but he put them off and did not pay. They wait till the debt is nearly six months past due, when they call on a collection agency to ascertain the condition of Oppenheimer. The agency inquires, and finds that if great haste was made some, perhaps all, of the claim could be collected; which information Archer communicated to Greenbaum. The defendants immediately make out an account, swear to it, and hand it to Ledyard, Archer & Co. to be sued and collected. Greenbaum says that he gave orders to Ledyard, Archer & Co. to "do their best" to collect their debt. McLennan & Archbald, the lawyers in Nebraska, commenced an action, and Greenbaum swears he was notified of the pendency of the action, Archer swears that after the judgment was obtained, he notified the defendants that judgment was obtained, and that they hoped to, and thought they should, be able to realize something on the judgment; the defendants all this time acquiescing in these proceedings. For the defendants now to say that they had not "reasonable cause to believe" Oppenheimer insolvent, or contemplating insolvency, is to stultify themselves. (*Bump's Bank. L. and Pr.* 405 to 408, 3d ed. *Smith, assignee,* v. *Buchanan, Alb. Law Jour.* 97, *vol.* 3, *No.* 5.) The statute does not require that the creditor should have actual knowledge of insolvency. That is not necessary to a right of action. (*Bump's Bank. L. and Pr.* 400, 3d ed. *Houghey* v. *Albion,* 2 *Bank. Reg.* 129.) The referee finds that the defendants' agents and attorneys had reasonable cause to believe Oppenheimer insolvent at the time the collection was made, and that the judgment was confessed and a "preference given thereby over other creditors, in fraud of the provisions of the act to establish a uniform system of bankruptcy, passed March 2, 1867."

Hoover *v.* Greenbaum.

It is clear, too, from the referee's opinion, that he found not only that the defendants' agents and attorneys had actual knowledge of the insolvency, but that the defendants themselves had reasonable cause to believe it. All the facts are found in favor of the plaintiff.

V. The amount which an assignee is entitled to recover from a creditor who has received a preference by means of a judgment, is the gross amount obtained on execution, without any deduction for the costs and expenses of the creditor. (*Street* v. *Dawson,* 1 *Balt. Law Trans.* 369. *Bill* v. *Beckwith*, 2 *Bank. Reg.* 82. *Bump's Bank. L. and Pr.* 410, 411, 3d ed., *and authorities there cited.. Street* v. *Dawson,* 4 *Bank. Reg.* 66.)

VI. Insolvency, as used in the bankrupt act, means the condition of a trader when he is not in the condition to pay his debts in the ordinary way, as persons carrying on business usually do. This being so, the fact that Oppenheimer was not able, and did not so do, was notice to the defendants of his insolvency. (*Bump's Bank. L. and Pr.* 399, 400, 3d ed. *Bank of Hastings* v. *Truax,* 1 *Bank. Reg.* 146. *In re Gray,* 2 *id.* 114. *In re J. B. Wright, Id.* 155. *Wadsworth* v. *Taylor, Id.* 101. *Graham* v. *Stark,* 3 *id.* 92. *Scammon* v. *Cole, Id.* 100.)

VII. The defendants got the benefit of the money by satisfaction of the attorneys' fees, and in the payment of Ledyard, Archer & Co.'s commissions, which Archer swears were from 5 to 10 per cent for collection.

*Brown & Estes,* for the respondent.

*By the Court,* INGRAHAM, P. J. The evidence in this case cannot be considered sufficient to charge upon the defendants knowledge of the insolvency of the debtor. There is no proof to show any knowledge on their part, of the insolvency, beyond the non-payment of the claim against him, and the collection of the judgment. If such

facts are held to be sufficient to charge a creditor with the knowledge required by the bankrupt act, it would be dangerous for any creditor to collect from his debtors the claims he had against them by legal proceedings. The creditor should have the knowledge that the debtor was acting in view of insolvency, and with intent to give him a preference. In this case the creditor had no such knowledge; and the facts which it is claimed the attorney for the creditor obtained in the prosecution of the suit, were not sufficient to charge on the defendant such knowledge. So far as appears in the case, the defendant had no knowledge that the action was brought by McLennan & Archbald in Nebraska, and there was no communication by them to the defendants. If they erred in the course they adopted, the defendants are not chargeable with their acts, without notice.

The judgment should be reversed, and a new trial ordered; costs to abide the event.

[First Department, General Term, at New York, April 1, 1872. *Ingraham*, P. J., and *Cardozo*, Justice.]